MICHAELA I. ALEXANDRU *v.* WEST HARTFORD OBSTETRICS AND GYNECOLOGY, P.C.
(AC 23620)

Lavery, C. J., and Bishop and McLachlan, Js.

Argued June 10—officially released August 5, 2003

*Michaela I. Alexandru*, pro se, the appellant (plaintiff).

*Melinda S. Monson*, for the appellee (defendant).

PER CURIAM. The plaintiff, Michaela I. Alexandru, appeals from the judgment of the trial court rendered after it granted the motion for summary judgment filed by the defendant, West Hartford Obstetrics and Gynecology, P.C., as to the second and third counts of her fourth revised complaint, filed October 2, 2001.[1] In count two of the revised complaint, the plaintiff alleged that the defendant improperly had released her medical records and attendant private information in violation of General Statutes §§ 52-146o (a) and 52-146i. In count three, the plaintiff alleged that by improperly releasing her medical records that contained information regarding her emotional and psychological condition, the defendant violated § 52-146i. We affirm the judgment of the trial court.

The following facts and procedural history are germane to our discussion of the plaintiff's claims. This action was commenced in November, 1999, as a four count complaint, stemming from an earlier action in 1995, in which the plaintiff had brought an action against a former employer in federal court, alleging sexual harassment, retaliatory discharge, negligent and intentional infliction of emotional distress, and breach of the covenant of good faith and fair dealing. The plaintiff claims in this case that in the federal action, she had disclosed William H. Gerber, an obstetrician formerly of West Hartford Obstetrics and Gynecology, P.C., as her expert witness and that during a deposition in conjunction with the federal action, Gerber wrongfully had disclosed confidential and private information about her.

---

[1] Previously, the court had granted a motion to strike the first and fourth counts of the fourth revised complaint. Because the plaintiff has not appealed from the court's decision regarding counts one and four, our review is confined to the action of the court in granting the motion for summary judgment as to counts two and three.

In response to the plaintiff's complaint, the defendant filed an answer and a motion for summary judgment on the ground that the disclosure by Gerber was permissible as a matter of law. In ruling on the defendant's motion for summary judgment, the court stated: "Dr. Gerber had been disclosed by the plaintiff's lawyer, attorney Patricia M. Strong, in her matter against Northeast Utilities, as her expert witness. The plaintiff was aware of the request and the disclosure of Dr. Gerber. The plaintiff's medical records were disclosed by her medical expert at a deposition process governed by the rules of federal procedure attended by her counsel and with no objection to either disclosure or the process. The disclosure was clearly made pursuant to the rules of court and, accordingly, the plaintiff's consent was not required.

"It must be noted, of course, that the plaintiff had executed a perfectly valid consent, authorizing the disclosure of the medical records by [Gerber]. . . . Indeed, it is perfectly reasonable to assume that a consent form was given to her lawyer to obtain an expert in the course of litigation and that the expert would be utilized in that litigation. After utilizing the federal judicial process and disclosing Dr. Gerber as her expert witness to substantiate the claims of her case, the plaintiff cannot now be heard to say that she did not give consent to her expert doctor to utilize and disclose her records."

The court granted summary judgment in favor of the defendant. While noting that the plaintiff had, in fact, given consent for the release of her medical records, the court determined that the defendant's disclosure did not require the plaintiff's consent, as it had been made pursuant to applicable rules of court. As to the plaintiff's claim in the third count, i.e., that the disclosure had violated provisions of § 52-146i, the court determined that because the records disclosed were not

communications regarding treatment by a psychiatrist, the requirements of § 52-146i did not apply. Finally, the court determined that to the extent that the plaintiff's claim in the third count was an effort to set forth a cause of action for intentional infliction of emotional distress, it failed as a matter of law. This appeal followed.

As a prelude to our discussion of the plaintiff's claims, we set forth our standard of review concerning the granting of summary judgment. "Pursuant to Practice Book § 17-49, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Such questions of law are subject to plenary appellate review." (Internal quotation marks omitted.) *Mytych* v. *May Dept. Stores Co.*, 260 Conn. 152, 158–59, 793 A.2d 1068 (2002).

I

The plaintiff first claims that the court improperly determined that the disclosure of her medical records by Gerber was authorized by the provisions of § 52-146o (b) (1). We are not persuaded.

General Statutes § 52-146o (a) generally proscribes the unauthorized release of patient medical records or patient communications unless the patient explicitly consents to such disclosure. That statute, however, contains an exception relevant to this case. That exception is set forth in § 52-146o (b), which provides in relevant part that the "[c]onsent of the patient or his authorized representative shall not be required for the disclosure of such communication or information (1) pursuant to any statute or regulation of any state agency or the rules of court . . . ."

The defendant argues, and we agree, that the disclosure of the plaintiff's medical records took place during

the deposition of the plaintiff's expert, Gerber, and that the disclosure was pursuant to applicable rules of court. The record reflects that prior to the deposition, Gerber had received a letter from the plaintiff's counsel in the federal action, advising that she represented the plaintiff and requesting Gerber to testify as an expert medical witness at trial. Counsel's letter also advised Gerber that as the plaintiff's expert, he would be expected to give his opinions concerning the plaintiff's diagnosis and treatment. As noted by the defendant, Gerber's deposition had been noticed pursuant to rule 30 of the Federal Rules of Civil Procedure and had included a request "to produce and permit the [defendant] . . . to inspect and duplicate at the time of this deposition or prior thereto Dr. Gerber's report prepared for this lawsuit and the medical file for [the plaintiff] including not limited to notes, letters, diagnoses and prescriptions." The deposition notice was within the allowable parameters of rule 30 (b) (5), which permits such a request for the production of documents. Thus, because the disclosure was made pursuant to applicable court rules, it clearly fell within the exception set forth in § 52-146o (b) (1).

Moreover, the record reveals that on December 5, 1994, the plaintiff executed a valid authorization for her medical records to be released to her attorney in the federal action. Having authorized release of that information to her attorney, she impliedly gave consent to her attorney to utilize the information on her behalf in advancing her claims in the federal action. See *Calcano* v. *Calcano*, 257 Conn. 230, 246, 777 A.2d 633 (2001). In *Calcano*, our Supreme Court opined that "[w]here, as here, the plaintiff's own attorney in a personal injury case explicitly forwards this information and invitation to the adversary, as part of an informal discovery process, the plaintiff was bound by the conduct of her

attorney, who was her 'authorized representative' . . . ." (Citation omitted.) Id.

## II

The plaintiff next claims that the court improperly determined that Gerber's disclosure did not violate the provisions of § 52-146i concerning the labeling of confidential records. The short and conclusive answer to that claim is that § 52-146i relates exclusively to communications between a psychiatrist and patient. Because Gerber is not a psychiatrist, the provisions of that statute are not applicable.

## III

The plaintiff's final claim is that the court improperly determined that to the extent that the allegations in the third count could be taken as an effort by the plaintiff to allege the tort of the intentional infliction of emotional distress, her complaint was legally insufficient. We disagree.

The third count of the fourth revised complaint contains an allegation that by wrongfully disclosing the plaintiff's medical records, the defendant "acted toward [the] plaintiff with malice, oppression, willful and conscious disregard of [the] plaintiff's rights, entitling the plaintiff to an award of punitive damages." In the exercise of its gatekeeping function and applying the criteria set forth in *Appleton* v. *Board of Education*, 254 Conn. 205, 757 A.2d 1059 (2000), the court determined that the allegations of the third count, construed in the light most favorable to the plaintiff, were legally insufficient to constitute the tort of intentional infliction of emotional distress.

As stated in *Appleton*, for a plaintiff to prevail on a claim for the intentional infliction of emotional distress, the plaintiff must establish: "(1) that the actor intended to inflict emotional distress or that he knew or should

have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) Id., 210.

"Liability [for tort of the intentional infliction of emotional distress] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' . . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Citation omitted; internal quotation marks omitted.) Id., 210–11.

We agree with the court's assessment that the plaintiff's allegation in count three that "[i]n doing the things herein alleged, the defendant acted toward [the] plaintiff with malice, oppression, willful and conscious disregard of [the] plaintiff's rights, entitling the plaintiff to an award of punitive damages" falls well short of setting forth a cause of action for intentional infliction of emotional distress.

The judgment is affirmed.