******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

MARCUS T. HARVIN *v.* YALE NEW HAVEN HEALTH
SERVICES CORPORATION ET AL.
(AC 46339)

Alvord, Westbrook and Pellegrino, Js.

*Syllabus*

The plaintiff, who previously had been convicted of various crimes in connec-
tion with a drunk driving incident, sought to recover damages from,
inter alia, the defendant hospital, L Co., for its alleged negligence in
disclosing the plaintiff's confidential health information during his crimi-
nal prosecution. The plaintiff claimed that L Co. unlawfully disclosed his
health information by providing certain unspecified confidential health
records to members of the Office of the Chief State's Attorney and, at
his criminal trial, through the testimony of two of L Co.'s agents, a
physician and a nurse who were employed by L Co. and who had treated
the plaintiff following the incident. L Co. filed a motion to strike, which
the trial court granted in part, striking all counts of the complaint against
L Co. except those sounding in negligence per se and negligent infliction
of emotional distress. Thereafter, L Co. filed a motion for summary
judgment, arguing that it was entitled to summary judgment because,
inter alia, any disclosure of the plaintiff's protected health information
by L Co. or its agents was made in response to a valid subpoena and
a court order. The trial court denied the motion, stating that L Co. did
not provide an evidentiary foundation as to what information had been
delivered, and in what manner, in response to the subpoena and court
order. Thereafter, L Co. filed a motion to dismiss, arguing that the trial
court lacked subject matter jurisdiction because L Co. had absolute
immunity under the litigation privilege, as any alleged disclosures were
made pursuant to a subpoena and a court order. The trial court denied
the motion, determining that it lacked a sufficient evidentiary basis on
which to determine whether the litigation privilege applied, and L Co.
appealed to this court. *Held*:

1. The motion to dismiss should have been granted with respect to the
remaining counts of the complaint to the extent that they were premised
on the disclosure of the plaintiff's health information by L Co.'s agents
during their testimony at the plaintiff's criminal trial, and, accordingly,
this court reversed that portion of the trial court's judgment denying L
Co.'s motion to dismiss: the plaintiff's attorney conceded at oral argu-
ment before this court that the litigation privilege applied with respect
to the allegations in the complaint that were premised on the testimony
provided by L Co.'s agents at the plaintiff's criminal trial, and, in doing
so, he effectively acknowledged that any disclosures by the witnesses

of the plaintiff's health information were relevant to the criminal prosecution; moreover, this court viewed that concession as effectively waiving or abandoning any and all arguments that the litigation privilege did not bar the plaintiff's action with respect to the witnesses' testimony.

2. The trial court's denial of the motion to dismiss with respect to the remaining counts of the complaint to the extent that they were premised on L Co.'s alleged disclosure of confidential health records to the state's attorney's office was not improper, and, accordingly, this court affirmed that portion of the trial court's judgment, without prejudice to L Co. renewing its claim regarding the applicability of the litigation privilege: the trial court lacked a sufficient evidentiary basis to determine whether the litigation privilege applied, as the allegations of the complaint, read broadly and in the light most favorable to the plaintiff, indicated that L Co. could have potentially disclosed confidential information in excess of that required under the subpoena, and L Co. did not negate that possibility simply by providing evidence demonstrating that it produced sealed medical records in compliance with the subpoena and the accompanying court order; moreover, L Co. never requested an evidentiary hearing, and it was within the discretion of the trial court to leave the jurisdictional issue for resolution following additional discovery or a trial on the merits rather than to resolve the matter by ordering an evidentiary hearing sua sponte.

Argued January 8—officially released April 30, 2024

*Procedural History*

Action to recover damages for, inter alia, the defendants' alleged negligence, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Budzik, J.*, granted the defendants' motion to strike as to certain counts; thereafter, the court, *Noble, J.*, granted the defendants' motion for summary judgment only with respect to the remaining counts against the named defendant, and rendered judgment thereon; subsequently, the court, *Connors, J.*, denied the motion to dismiss filed by the defendant Lawrence + Memorial Hospital, and the defendant Lawrence + Memorial Hospital appealed to this court. *Reversed in part; judgment directed.*

*Michael G. Rigg*, with whom, on the brief, was *Adam Maiocco*, for the appellant (defendant Lawrence + Memorial Hospital).

*Alexander T. Taubes*, for the appellee (plaintiff).

*Opinion*

WESTBROOK, J. In this civil action, the plaintiff, Marcus T. Harvin, a former inmate, asserts claims of, inter alia, negligence per se and negligent infliction of emotional distress against the defendant Lawrence + Memorial Hospital[1] on the basis of its allegedly unlawful disclosure of his confidential health information during his criminal prosecution.[2] The plaintiff alleges that the defendant unlawfully disclosed his confidential health information in two ways. First, he alleges that the defendant unlawfully provided certain unspecified confidential health records, including a psychiatric evaluation, to members of the Office of the Chief State's Attorney. Second, he alleges that two of the defendant's agents disclosed confidential health information during their testimony at his criminal trial. The defendant appeals from the judgment of the trial court denying its motion to dismiss the action for lack of subject matter jurisdiction on the theory that the defendant is entitled to absolute immunity from suit under the litigation privilege because any and all disclosures of the plaintiff's confidential health information, whether by itself or its agents, occurred in the course of the criminal litigation and in response to a valid subpoena and court order.[3]

---

[1] Yale New Haven Health Services Corporation (Yale New Haven) also was named as a defendant in the underlying action. The court rendered summary judgment on all counts brought against Yale New Haven, and the plaintiff did not appeal that ruling. Yale New Haven has not participated in the present appeal. Accordingly, in this opinion, we refer to Lawrence + Memorial Hospital as the defendant and to Yale New Haven by name.

[2] According to the plaintiff, the alleged disclosure violated General Statutes (Rev. to 2015) § 52-146d, General Statutes §§ 52-146e (a) and 52-146o (a), and 45 C.F.R. § 164.512 (e) (2015), a federal regulation promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d et seq.

[3] Although the denial of a motion to dismiss ordinarily is an interlocutory ruling and, thus, not immediately appealable; see, e.g., *Harger* v. *Odlum*, 153 Conn. App. 764, 768, 107 A.3d 430 (2014); "[t]he doctrine of absolute immunity, known also as the litigation privilege . . . protects *against suit*

The defendant specifically claims that the court improperly determined that it lacked a sufficient evidentiary basis on which to determine if the litigation privilege applied under the circumstances of this case.

At oral argument before this court, the plaintiff's attorney conceded, and we agree, that the litigation privilege does bar those portions of the underlying action premised on the testimony provided by the defendant's agents at the plaintiff's criminal trial. We disagree, however, that the defendant demonstrated on this record that it is entitled to litigation privilege with respect to the allegations of unlawful disclosure of confidential health information to members of the Office of the Chief State's Attorney. Accordingly, for the reasons that follow, we reverse in part and affirm in part the judgment of the trial court and remand the case with direction to grant the motion to dismiss to the extent that the remaining counts are premised on the testimony given by the defendant's agents at the plaintiff's criminal trial.

The following facts, as alleged in the complaint or otherwise undisputed in the record,[4] and procedural

as well as liability—in effect, against having to litigate at all." (Citations omitted; emphasis added; internal quotation marks omitted.) *Carter* v. *Bowler*, 211 Conn. App. 119, 122, 271 A.3d 1080 (2022). To vindicate the right of immunity from suit—as distinguished from a right to immunity from liability—the denial of a motion to dismiss that raises a colorable claim of absolute immunity is immediately appealable under the second prong of the test set forth in *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). See *Smith* v. *Supple*, 346 Conn. 928, 941, 293 A.3d 851 (2023); *Chadha* v. *Charlotte Hungerford Hospital*, 272 Conn. 776, 785, 865 A.2d 1163 (2005). Because there is no dispute that the underlying motion to dismiss raises a colorable claim of absolute immunity, we have jurisdiction over the present appeal.

[4] In reviewing a trial court's ruling on a motion to dismiss, "we take the facts to be those alleged in the complaint, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Rioux* v. *Barry*, 283 Conn. 338, 341, 927 A.2d 304 (2007). Nevertheless, given that the present motion to dismiss was filed after several years of litigation, which consisted of the adjudication of several dispositive motions, including two motions for summary judgment, we properly may rely on the record

history are relevant to our review of the defendant's claim. In 2014, the plaintiff was arrested in connection with a drunk driving incident that resulted in serious injuries, and, following a criminal trial, he was convicted of multiple offenses.[5] He received a total effective

as a whole in setting forth the operative facts. See *Conboy* v. *State*, 292 Conn. 642, 650–51, 974 A.2d 669 (2009) (explaining that, "depending on the state of the record at the time the motion [to dismiss] is filed," court properly may decide motion on basis of "(1) the complaint alone; (2) the complaint *supplemented by undisputed facts evidenced in the record*; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts" (emphasis added; internal quotation marks omitted)).

[5] The following facts underlying the plaintiff's criminal conviction are not in dispute and were set forth by the trial court in its decision granting in part and denying in part the defendant's and Yale New Haven's joint motion for summary judgment. "On May 25, 2014, an officer of the Ledyard Police Department responded to a call of a stopped vehicle on [Route] 12 with an adult asleep behind the wheel with two children in the backseat of the car. The investigating police officer found the vehicle stopped with the engine running and two small children in the rear seat. The present plaintiff was asleep behind the wheel. He was awakened and informed that the officer intended to perform a field sobriety test as a consequence of the smell of alcoholic beverage coming from the car, an observation of bloodshot eyes and slow slurred speech. The plaintiff . . . identified himself as Donte Harvin, his brother. When the police officer returned to his vehicle to process the information he was provided by the plaintiff, the plaintiff's vehicle sped off at a high rate of speed. Ultimately, the vehicle driven by the plaintiff was found upside down in the swimming pool of a residence on Baldwin Hill [Road in] Ledyard . . . . The plaintiff and the two children in the backseat, ages two and four, his children, were entrapped in the vehicle due to extensive damage. Further investigation found that the vehicle had left the road, hit a utility pole, ran through a [Department of Transportation] traffic control box, over a metal beam guardrail and then came to rest in the pool. The plaintiff's two year old child suffered a partially severed right forearm that was connected by only a small amount of skin. The plaintiff was taken to [the defendant] where blood and urine samples were collected and medical treatment [was] rendered.

"Following an arrest . . . and subsequent trial, the plaintiff was found guilty on March 3, 2016, of assault in the second degree with a motor vehicle in violation of [General Statutes] § 53a-60d; two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (1); two counts of reckless endangerment in the first degree in violation of General Statutes § 53a-63; interfering with an officer in violation of General Statutes [Supp. 2014] § 53a-167a; reckless driving in violation of General Statutes [Rev. to 2013] § 14-222; illegal operation of a motor vehicle while under the influence of alcohol

sentence of twenty-three years of incarceration, execution suspended after fourteen and one-half years, followed by five years of probation with special conditions. *State* v. *Marcus H.*, 190 Conn. App. 332, 337, 210 A.3d 607, cert. denied, 332 Conn. 910, 211 A.3d 71, cert. denied, U.S. , 140 S. Ct. 540, 205 L. Ed. 2d 343 (2019).

As part of the criminal proceedings, the state served the defendant with a subpoena duces tecum that sought the plaintiff's medical records pertaining to his treatment at the defendant's hospital following his arrest on May 25, 2014. The subpoena was accompanied by a court order pursuant to General Statutes § 54-2a (a) directing the defendant to comply with the subpoena. On August 14, 2015, the defendant, through its agents, provided to the prosecuting attorney, Sarah Bowman, certain sealed medical records. That same day, Attorney Bowman appeared before the trial court, which issued an order unsealing these records as to Attorney Bowman and defense counsel. During the subsequent criminal trial, Laura Arre, a registered nurse, and Bernard Ferguson, a physician, each of whom worked for the defendant in the hospital's emergency department, appeared and provided testimony regarding the plaintiff's diagnosis, medical treatment and related medical records.

In July, 2017, following his criminal conviction, the plaintiff, acting as a self-represented litigant, brought the underlying civil action.[6] The operative amended

---

and/or drugs in violation of General Statutes [Rev. to 2013] § 14-227a; and increasing the speed of a motor vehicle in an attempt to escape from a police officer in violation of General Statutes § 14-223 (b)." *Harvin* v. *Yale New Haven Health Services Corp.*, Superior Court, judicial district of Hartford, Docket No. CV-17-5045594-S (November 4, 2019).

[6] The plaintiff is now represented by counsel, who filed an appearance in June, 2022, just prior to the filing of the motion to dismiss underlying this appeal.

complaint was filed on December 15, 2017, and contained ten counts, all premised on the allegedly illegal and unauthorized disclosure of his confidential medical information by the defendant, Yale New Haven, and/or their respective agents. Counts one, three, five, seven and nine were brought against the defendant and sounded in, respectively, negligence per se, negligence, negligent supervision and training, negligent infliction of emotional distress, and invasion of privacy. Counts two, four, six, eight and ten alleged the same causes of action but against Yale New Haven on the theory that it was liable as the parent corporation of the defendant.

On November 5, 2018, the court, *Budzik, J.*, granted in part a joint motion to strike filed by the defendant and Yale New Haven and struck all counts of the complaint except one, two, seven and eight sounding in negligence per se and negligent infliction of emotional distress. The plaintiff did not replead, and the court subsequently rendered judgment against the plaintiff on the stricken counts.

The defendant and Yale New Haven next filed a joint motion for summary judgment on the remaining four counts. Yale New Haven argued that it was entitled to judgment as a matter of law because it had not become the parent corporation of the defendant until September 8, 2016, which was after the alleged disclosures of information complained of by the plaintiff.[7] Accordingly, it had no proper role in this matter. The defendant argued that it was entitled to summary judgment because any disclosure of the plaintiff's protected health information by the defendant or its agents was done in response to a valid subpoena and court order, none of the statutes, regulations, or policies cited in support of the negligence per se counts was applicable in this matter, and

[7] The plaintiff alleged that his medical records were unlawfully disclosed on August 14, 2015, and that the testimony disclosing his private medical information occurred on February 25 and 29, 2016.

there was no evidence that the disclosure of protected health information caused the plaintiff any emotional distress.

On November 4, 2019, the court, *Noble, J.*, rendered summary judgment in favor of Yale New Haven as to the remaining counts against it but denied summary judgment regarding the two remaining counts against the defendant. In so doing, the court explained, in relevant part, that "there was *no evidentiary foundation provided by the* [*defendant*] *as to what was delivered or how it was delivered, in response to the subpoena duces tecum and court order.* While the plaintiff offered a purported transcript of a hearing on August 14, 2015 . . . in which medical records from [the defendant] were said to have been 'just picked up' by the prosecutor, no direct evidentiary nexus is offered by the [defendant] between those records 'just picked up' by the prosecutor and the records subpoenaed. . . . As an example of the lack of evidentiary proof for the defendant['s] assertions, the [defendant] refer[s] the court to Exhibit C, the court order and subpoena, in order to advance the proposition that, '[p]ursuant [to] the order and subpoena, [the defendant] sent seventy-nine pages of sealed medical records to the Criminal Clerk's Office at the New London Superior Court.' . . . Despite having carefully reviewed the defendant['s] Exhibit C, the court is unable to find any reference to what was delivered, how it was delivered or . . . of how many pages it consisted. The court therefore cannot make a finding of no genuine issue of material fact as to the adequacy of compliance with any state or federal confidentiality provisions. Because the propriety of the testimony of both [Arre] and [Ferguson] flows . . . from the propriety of [the defendant's] initial disclosure of medical records, the court is also unable to find a lack of a genuine issue of material fact." (Citation omitted; emphasis altered.)

In short, the court was unable to determine from the evidence provided in support of summary judgment exactly what was in the sealed medical records that the defendant produced in response to the subpoena and that were later unsealed by the court and whether the allegations in the complaint of improperly disclosed health information were limited to only those documents provided to Attorney Bowman and subsequently unsealed by the court as evidenced in the transcript provided. The court thereafter denied the defendant's motion to reargue the motion for summary judgment.[8] In 2020 and 2021, the defendant filed several additional potentially dispositive pretrial motions, to no avail.[9]

On August 22, 2022, the defendant filed the motion to dismiss that is the subject of the present appeal. According to the defendant, "witnesses who provide testimony and disclosures in a formal judicial proceeding enjoy absolute immunity under the litigation privilege. A witness, and by extension his/her employer, who

---

[8] As noted by the plaintiff, the defendant has raised no claim on appeal challenging the basis of Judge Noble's summary judgment ruling.

[9] Following the denial of the motion for summary judgment as to the two remaining counts against it, the defendant, on September 30, 2020, filed a motion to dismiss the action for lack of subject matter jurisdiction on the theory that the action was unripe for adjudication. According to the defendant, the action necessarily implied that the plaintiff's criminal conviction was somehow invalid and, therefore, unless and until the underlying conviction was invalidated, the action was not ripe. The court, *Schuman, J.*, noting that the motion was governed by *Taylor* v. *Wallace*, 184 Conn. App. 43, 51, 194 A.3d 343 (2018), denied the motion to dismiss because it construed the present action as alleging that the plaintiff had suffered compensatory damage from the alleged disclosure of his confidential medical information at his criminal trial as opposed to raising any challenge to his ultimate conviction.

On June 21, 2021, the defendant filed its second motion for summary judgment in which it argued, among other things, that this matter involved complex issues that required the plaintiff to present expert testimony and that the plaintiff had missed his deadline to disclose an expert. The court, *Hon. Jane S. Scholl*, judge trial referee, denied the motion for summary judgment on April 28, 2022.

produces records pursuant to a subpoena and court order enjoys absolute immunity from suit and liability. Moreover, because [Arre's] and [Ferguson's] testimony during the plaintiff's criminal trial fit[s] squarely within the litigation privilege, [the defendant] has absolute immunity from suit and the case must be dismissed in its entirety for lack of subject matter jurisdiction." The plaintiff filed an opposition arguing that the motion to dismiss was nothing more than a last-minute attempt to delay trial and that the litigation privilege is inapplicable in actions alleging the unauthorized disclosure of confidential medical records. According to the plaintiff, in *Byrne* v. *Avery Center for Obstetrics & Gynecology, P.C.*, 327 Conn. 540, 550, 175 A.3d 1 (2018), our Supreme Court recognized a common-law cause of action against medical providers for the unlawful disclosure of medical information and it "cannot be the law" that the litigation privilege would bar such an action simply because the unauthorized disclosure had occurred in the context of a judicial proceeding. Neither party requested an evidentiary hearing on the motion to dismiss.

The court, *Connors, J.*, issued a decision on January 17, 2023, denying the motion to dismiss. The court, after setting forth relevant legal principles, concluded: "Even assuming that the litigation privilege applies to the types of claims that the plaintiff alleges . . . the court has no basis to conclude that the litigation privilege applies in the present matter. In particular, although [any] testimony at the plaintiff's criminal trial would generally be subject to the litigation privilege . . . the defendant failed to submit any evidentiary foundation to show that Arre['s] and Ferguson's testimonies were sufficiently relevant to the issues involved in the plaintiff's criminal trial so as to qualify for the litigation privilege. . . .

"The defendant similarly failed to provide any evidentiary foundation to show that the alleged production of

the plaintiff's health records to members of the Office of the State's Attorney was relevant to the issues involved in the plaintiff's criminal trial or made in response to a subpoena. The defendant merely refers to a memorandum of decision where the court, *Noble, J.*, took judicial notice of a court order and a subpoena duces tecum. . . . The court also noted, however, that there was no evidentiary foundation provided by [the defendant] as to what was delivered or how it was delivered, in response to the subpoena duces tecum and court order. . . . In this motion to dismiss, the defendant has again provided no evidence to show that its production of the plaintiff's medical records was in response to said subpoena, and the same cannot be inferred from the complaint. Thus, the court has no basis to conclude that the litigation privilege applies to the alleged production of the plaintiff's health records." (Citations omitted; internal quotation marks omitted.) On the basis of that reasoning, the court denied the defendant's motion to dismiss. The defendant filed a timely motion to reargue, which the court denied. This appeal followed.

The defendant claims on appeal that the trial court improperly determined that it lacked a sufficient evidentiary basis on which to determine if the litigation privilege applied in this case. Given that the plaintiff now concedes that the litigation privilege bars his action, at least to the extent that it is premised on the testimony provided by the defendant's agents at his criminal trial, we agree that the motion to dismiss should be granted in part with respect to both remaining counts of the complaint. We nevertheless agree with the trial court's conclusion that it lacked a sufficient evidentiary basis on which to grant the motion to dismiss with respect to the allegations of unlawful disclosure of confidential medical records to members of the state's attorney's office.

We begin our analysis by setting forth our standard of review and other governing legal principles. In an appeal from a court's denial of a motion to dismiss, "[w]e review the trial court's ultimate legal conclusion and its resulting denial of dismissal de novo. . . . In conducting this review, we [generally] take the facts to be those alleged in the complaint, construing them in a manner most favorable to the pleader. . . . We are mindful that the doctrine of absolute immunity, also referred to as the litigation privilege, implicates the court's subject matter jurisdiction . . . and that every presumption favoring jurisdiction should be indulged." (Citations omitted; internal quotation marks omitted.) *Deutsche Bank AG* v. *Vik*, 214 Conn. App. 487, 496, 281 A.3d 12, cert. granted, 345 Conn. 964, 285 A.3d 388 (2022). Whether absolute immunity is applicable under the facts of a particular case presents "a question of law over which our review is plenary." *Simms* v. *Seaman*, 308 Conn. 523, 530, 69 A.3d 880 (2013).

"Trial courts addressing motions to dismiss for lack of subject matter jurisdiction pursuant to [Practice Book § 10-30] may encounter different situations, depending on the status of the record in the case. . . . [L]ack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. . . . When a trial court decides a jurisdictional question raised by a pretrial motion to dismiss on the basis of the complaint alone, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . .

"In contrast, if the complaint is supplemented by undisputed facts established by affidavits submitted in support of the motion to dismiss . . . other types of undisputed evidence . . . and/or public records of which judicial notice may be taken . . . the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts]. . . . If affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings. . . . If, however, the defendant submits either no proof to rebut the plaintiff's jurisdictional allegations . . . or only evidence that fails to call those allegations into question . . . the plaintiff need not supply counteraffidavits or other evidence to support the complaint, but may rest on the jurisdictional allegations therein. . . .

"Finally, where a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts. . . . Likewise, if the question of jurisdiction is intertwined with the merits of the case, a court cannot resolve the jurisdictional question without a hearing to evaluate those merits. . . . [If] the jurisdictional facts are intertwined with the merits of the case, the court may in its discretion choose to postpone resolution of the jurisdictional question until the parties complete further discovery or, if necessary, a full trial on the merits has occurred." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Cuozzo*

v. *Orange*, 315 Conn. 606, 615–16, 109 A.3d 903 (2015); see also *Lampasona* v. *Jacobs*, 209 Conn. 724, 728, 553 A.2d 175 ("[i]n some cases . . . it is necessary to examine the facts of the case to determine whether it is within a general class that the court has power to hear"), cert. denied, 492 U.S. 919, 109 S. Ct. 3244, 106 L. Ed. 2d 590 (1989).

"Generally speaking, it often will be prudent to defer action on a motion to dismiss raising issues that are interrelated or inextricably intertwined with the merits of a dispute . . . ." *307 White Street Realty, LLC* v. *Beaver Brook Group, LLC*, 216 Conn. App. 750, 770, 286 A.3d 467 (2022). Although our Supreme Court has left to the discretion of the trial court whether to hold an immediate evidentiary hearing or to defer ruling on a motion to dismiss until after a full trial on the merits, "[w]hether the court properly exercises that discretion in a given case . . . is not beyond our review." Id. "Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . The salient inquiry is whether the court could have reasonably concluded as it did. . . . In determining whether there has been an abuse of discretion, *much depends upon the circumstances of each case.*" (Emphasis added; internal quotation marks omitted.) Id.

Turning to the substance of the motion to dismiss, "Connecticut has long recognized the litigation privilege." *Simms* v. *Seaman*, supra, 308 Conn. 536. The origin of the privilege is a long-standing common-law tradition protecting "communications uttered or published in the course of judicial proceedings . . . so long as they are in some way pertinent to the subject of the controversy" and barring the recovery of damages on the basis of defamatory statements. (Internal quotation marks omitted.) Id., 537. As our Supreme Court has

recognized, however, "[i]n recent decades, Connecticut attorneys have tested the limits of the [litigation] privilege with respect to alleged misconduct other than defamatory statements during judicial proceedings, with mixed results." Id., 540.

"The purpose of affording absolute immunity to those who provide information in connection with judicial and quasi-judicial proceedings is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements. . . . Put simply, absolute immunity furthers the public policy of encouraging participation and candor in judicial and quasi-judicial proceedings. This objective would be thwarted if those persons whom the common-law doctrine was intended to protect nevertheless faced the threat of suit. In this regard, the purpose of the absolute immunity afforded participants in judicial and quasi-judicial proceedings is the same as the purpose of the sovereign immunity enjoyed by the state. . . . As a result, courts have recognized absolute immunity as a defense in certain retaliatory civil actions in order to remove this disincentive and thus encourage citizens to come forward with complaints or to testify." (Citations omitted; internal quotation marks omitted.) *Rioux* v. *Barry*, 283 Conn. 338, 343–44, 927 A.2d 304 (2007).

As acknowledged in *Dorfman* v. *Smith*, 342 Conn. 582, 592, 271 A.3d 53 (2022), courts in this state have "recognized that absolute immunity extends to an array of retaliatory civil actions beyond claims of defamation . . . ." By way of examples, our Supreme Court has "concluded that absolute immunity bars claims of intentional interference with contractual or beneficial relations arising from statements made during a civil action. . . . [It has] also precluded claims of intentional infliction of emotional distress arising from statements made during judicial proceedings on the basis of absolute

immunity. . . . Finally, [it has] . . . applied absolute immunity to bar retaliatory claims of fraud against attorneys for their actions during litigation. . . . In reviewing these cases, it becomes clear that, in expanding the doctrine of absolute immunity to bar claims beyond defamation, [our Supreme Court] has sought to ensure that the conduct that absolute immunity is intended to protect, namely, participation and candor in judicial proceedings, remains protected regardless of the particular tort alleged in response to the words used during participation in the judicial process. Indeed . . . [c]ommentators have observed that, because the privilege protects the communication, the nature of the theory [on which the challenge is based] is irrelevant." (Citations omitted; internal quotation marks omitted.) *Bruno* v. *Travelers Cos.*, 172 Conn. App. 717, 726–27, 161 A.3d 630 (2017).

Our Supreme Court in *Dorfman* recently "identified the following factors as relevant to any determination of whether policy considerations support applying absolute immunity to any particular cause of action: (1) whether the alleged conduct subverts the underlying purpose of a judicial proceeding in a similar way to how conduct constituting abuse of process and vexatious litigation subverts that underlying purpose; (2) whether the alleged conduct is similar in essential respects to defamatory statements, inasmuch as the privilege bars a defamation action; and (3) whether the alleged conduct may be adequately addressed by other available remedies. . . . Assisting in our evaluation of these factors, to the extent applicable, we have considered as persuasive whether federal courts have protected the alleged conduct pursuant to the litigation privilege. . . . These factors and considerations, however, are simply instructive, and courts must focus on the issues relevant to the competing interests in each case in light of the particular context of the case. . . . We are not required

to rely exclusively or entirely on these factors, but, instead, they are useful when undertaking a careful balancing of all competing public policies implicated by the specific claim at issue and determining whether affording parties this common-law immunity from this common-law action is warranted." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *Dorfman* v. *Smith*, supra, 342 Conn. 592–94. With these principles in mind, we turn to the claims on appeal.

I

We begin with a brief discussion of what is no longer at issue in the present case. As previously indicated, the plaintiff's attorney conceded at oral argument before this court that the litigation privilege applies with respect to those allegations in the complaint that the defendant may be found liable on the basis of the testimony provided by its agents at the plaintiff's criminal trial. Although we generally are not bound by the concessions of the parties regarding matters implicating subject matter jurisdiction, we nonetheless view the concession of the plaintiff's attorney at oral argument before this court as having effectively waived or abandoned any and all arguments that the litigation privilege does not bar the plaintiff's action with respect to the witnesses' testimony.

Our Supreme Court consistently has held that "communications made during and relevant to a judicial proceeding are afforded immunity because [w]itnesses and parties to judicial proceedings must be permitted to speak freely, without subjecting their statements and intentions to later scrutiny by an indignant jury, if the judicial process is to function." (Internal quotation marks omitted.) Id., 601. As the trial court acknowledged in its decision, there is no doubt that the testimony provided by Arre and Ferguson at the plaintiff's

criminal trial ordinarily would be subject to the litigation privilege so long as their testimonies were sufficiently relevant to the issues involved in the plaintiff's criminal trial. The plaintiff, by conceding before this court that the litigation privilege applies with respect to the witnesses' testimony, effectively acknowledges that any disclosures by the witnesses of the plaintiff's health information were relevant to the criminal prosecution. The witnesses clearly fall within the class of persons that the litigation privilege is intended to protect from retaliatory lawsuits. Our review of the witnesses' testimony demonstrates there is nothing on which to conclude that their testimony would fall outside our Supreme Court's broad application of the litigation privilege to witness testimony.

Accordingly, in exercising de novo review over the motion to dismiss, we conclude that the motion to dismiss should be granted with respect to all remaining counts of the complaint to the extent that they are premised on the disclosure of the plaintiff's health information by the defendant's agents during their testimony at his criminal trial. See *Paragon Construction Co.* v. *Dept. of Public Works*, 130 Conn. App. 211, 221 n.10, 23 A.3d 732 (2011) (appellate courts may order dismissal of only portions of counts of complaint). We therefore reverse that portion of the trial court's judgment denying the defendant's motion to dismiss.

II

We now turn to the remainder of the defendant's claim, namely, that, to the extent the plaintiff's negligence per se and negligent infliction of emotional distress counts are founded on allegations that the defendant unlawfully disclosed confidential health records to the state's attorney's office, the court improperly denied the motion to dismiss on the ground that it

lacked a sufficient evidentiary basis to determine if the litigation privilege applied. We are not persuaded.

Unlike with statements made by witnesses during testimony, our jurisprudence regarding the application of the litigation privilege in the context of the disclosure of documents is not as well developed. Nevertheless, our Supreme Court has stated that "[t]he privilege extends to pleadings *and other papers made a part of a judicial or quasi-judicial proceeding,* as long as the statements relate sufficiently to issues involved in a proposed or ongoing judicial proceeding . . . with the test for relevancy described as generous . . . . This is true even if the communications are false, extreme, outrageous, or malicious." (Citations omitted; emphasis added; internal quotation marks omitted.) *Dorfman* v. *Smith,* supra, 342 Conn. 601–602. Moreover, in *Bruno* v. *Travelers Cos.,* supra, 172 Conn. App. 727, 729, this court concluded that the defendants, who had produced documents and provided testimony specifically in response to a duly issued subpoena, were protected by the doctrine of absolute immunity as applied to the litigation privilege. In reaching that conclusion, the court noted that "the defendants are not alleged to have acted outside of the subpoena or to have done anything more than answer questions and produce documents that were asked or requested of them during the hearing." Id., 727.

The plaintiff nonetheless argues that the litigation privilege should not be applied by courts in lawsuits alleging the unlawful disclosure of confidential medical records because its application would somehow contravene our Supreme Court's decision in *Byrne* v. *Avery Center for Obstetrics & Gynecology, P.C.,* supra, 327 Conn. 550–51, in which the court recognized that Connecticut's common law included a cause of action against medical providers for the unlawful disclosure

of medical information. We are not convinced that anything in the *Byrne* decision precludes application of the litigation privilege in the present case, most certainly not in the blanket manner suggested by the plaintiff.

In *Byrne*, the plaintiff had initiated a civil action against the defendant health care provider asserting various causes of action, including counts sounding in negligence and negligent infliction of emotional distress. Id., 543–44. The plaintiff alleged that the defendant had breached her right to confidentiality in certain protected health information by disclosing the information in response to a subpoena without her consent. Id., 542–43. The trial court granted summary judgment in favor of the defendant on the negligence and negligent infliction of emotional distress counts, determining that "no courts in Connecticut, to date, recognized or adopted a common-law privilege for communications between a patient and physicians." (Internal quotation marks omitted.) Id., 548. The plaintiff appealed. Id., 549. After transferring the appeal to its docket; id., 541 n.2; our Supreme Court recognized a common-law cause of action for breach of the duty of confidentiality in the physician-patient relationship by the disclosure of medical information, *unless the disclosure was otherwise allowed by law*. Id., 572–73. It reversed the trial court's summary judgment, agreeing with the plaintiff that the defendant health care provider owed the plaintiff a common-law duty of confidentiality and that a common-law action was not barred or preempted by General Statutes § 52-146o or the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d et seq., and its implementing regulations. Id., 542, 550. The issue of immunity from suit under the litigation privilege was not presented to, considered by, or addressed by our Supreme Court in *Byrne*. Consequently, we agree

with the defendant that the plaintiff's reliance on *Byrne* is entirely misplaced.

The defendant, in its most recent motion to dismiss, seeks to use the litigation privilege to bar the present action premised on the negligent disclosure of confidential medical information. It has, however, failed to present the court with evidentiary support for its varying arguments as to why this matter should not proceed to trial. Unlike in *Bruno,* in which there was no indication that the defendants had done anything other than comply with a valid subpoena issued as part of judicial proceedings; see *Bruno* v. *Travelers Cos.,* supra, 172 Conn. App. 727–28; here, the allegations of the complaint, read broadly and in the light most favorable to the plaintiff, indicate that the defendant could have potentially disclosed confidential information in excess of that required under the subpoena. The burden certainly will be on the plaintiff at trial to produce evidence in support of such an allegation. The defendant, simply by virtue of evidence demonstrating that it produced sealed medical records in compliance with the subpoena and accompanying court order, does not, however, negate the possibility that the defendant also disclosed other records to the state's attorney.

As the plaintiff notes in his appellate brief, despite six years of litigation, the defendant has not filed an answer to the complaint admitting or denying his allegations, which, in the context of a motion to dismiss, we must accept as true. Furthermore, there has never been an evidentiary hearing in this matter. We, like the trial court, cannot, on the basis of the scant factual record developed thus far, conclude that the plaintiff's claims should be barred by absolute immunity under the litigation privilege. Accordingly, we reject the defendant's claim that the court improperly denied its motion to dismiss on the basis of evidentiary insufficiency.

Although the policy considerations that underlie the litigation privilege could, under the right circumstances, support its application to lawsuits alleging the unlawful disclosure of confidential medical information, including by the production of documents in response to a subpoena duces tecum and court order, we leave that issue to be decided in the first instance by the trial court in this matter on a more complete record and in accordance with the guidance provided by our Supreme Court in *Dorfman* v. *Smith*, supra, 342 Conn. 592–94.

Finally, although we conclude that a determination regarding the applicability of the litigation privilege can be made only after developing the necessary record, including precisely what documents and information were disclosed, what evidence the plaintiff has that the defendant exceeded its obligations under the subpeona, and how, to whom and when documents were disclosed, we are not persuaded that the court abused its discretion by not conducting, *sua sponte*, an evidentiary hearing to resolve these factual issues. Whether the litigation privilege applies in the present case largely turns on whether the defendant disclosed records that were not covered by the subpoena and court orders, which is an issue that is clearly intertwined with the merits of the action. See *Conboy* v. *State*, 292 Conn. 642, 653–54, 974 A.2d 669 (2009). Furthermore, the defendant never requested an evidentiary hearing, despite the court having indicated, when it denied the defendant's summary judgment motion, that issues of material fact existed regarding the facts surrounding the disclosure of documents in this matter. It was well within the discretion of the court not to resolve a jurisdictional issue by ordering an evidentiary hearing but to leave the matter for resolution following additional discovery or a trial on the merits. See id. The defendant is not precluded from renewing its claim—either at trial or in a renewed motion to dismiss based on a more

fulsome record—that liability, if it exists on these facts, should be barred by the litigation privilege.[10]

The judgment is reversed with respect to the two remaining counts to the extent that they are premised on the testimony given by the defendant's agents at the plaintiff's criminal trial and the case is remanded with direction to grant the motion to dismiss in part; the judgment is affirmed in all other respects without prejudice to the defendant renewing its claim regarding the applicability of the litigation privilege.

In this opinion the other judges concurred.

---

[10] We are cognizant that, at this stage of the proceedings, the defendant effectively has lost its right to protection against suit. The applicability of the litigation privilege, however, was raised late in these proceedings, the defendant failed to provide the court with an adequate record for review of its claims, and it did not request an evidentiary hearing prior to the court ruling on the motion to dismiss. The trial court, however, may yet conclude that the privilege is applicable and thus provide relief by barring liability against the defendant.